OPINION OF THE COURT
Shlomo S. Hagler, J.
Defendant Daniel Malisky moves, pursuant to CPLR 3212, for *854 an order granting him summary judgment dismissing this action for personal injuries.
Factual Background
Plaintiff Pablo Villegas maintains that he was injured on June 14, 2008, at about 1:30 a.m., at a house located at 325 Edge of Woods Road, Southampton, New York (subject premises or house) owned by defendant. Plaintiff contends that he, and two of his friends, met a woman named “Noelle” at a bar/restaurant in Southampton, New York. Plaintiff testified that he had two beers at the bar. Noelle invited the group to return to the subject premises where she was staying in Southampton. Plaintiff testified that after arriving at the subject premises and spending some time inside, he walked with another person outside onto the front deck area, in order to smoke a cigarette. Plaintiff states that he walked out approximately three steps or six feet onto the deck and remained on the deck area for four to five minutes. Plaintiff also testified that there were no lights lit on the deck. When it suddenly began to rain, plaintiff turned towards the house and, upon seeing light from inside the doorway, attempted to walk quickly inside the house and walked directly into the glass entrance door. Plaintiff alleges that he never saw the glass entrance door at any time before his accident because someone always preceded him through it. Plaintiff says that his face struck the closed glass door, that the glass door broke, causing severe lacerations to his forehead, and cuts on his nose and lip.
The subject premises where plaintiffs accident occurred was Malisky’s principal residence. Malisky averred that he permitted his friend Justin Mitchell to occasionally stay at the house when he was not using it. Mitchell stated that, in exchange for occasionally using this house as well as Malisky’s apartment on Central Park West in Manhattan, he would pay some of the bills for the house (specifically the LIPA electric bill, the Internet bill, and a pool maintenance bill).
Mitchell testified that in addition to occasionally staying at the subject premises, he would also sometimes allow and charge other people to stay there. However, Mitchell acknowledged that although he covered some of the expenses for the house on a regular basis in exchange for living at the Central Park Avenue apartment and the occasional use of the house, he neither informed Malisky and Castellano of his practice of renting out *855 the subject premises for money nor did he share any of the money he received for the house with them. Mitchell testified that he was not at the subject premises on the date of the accident and that he had rented the house to a woman named Noelle.
Frank Castellano, defendant’s life-partner, also resides at the subject premises with Malisky, and maintains that he did not have any prior notice of problems with the glass door which allegedly caused plaintiffs injuries. Both Malisky and Castellano testified that they were not aware that Mitchell was charging other people for the use of the house.
On February 3, 2009, plaintiff commenced this action by filing a summons and complaint, alleging that defendant was negligent in the ownership, maintenance and operation of the subject premises. (See exhibit A to the motion.) Defendant served his answer to plaintiff on March 9, 2009, contending that he had no notice of any problems with the subject glass door, and asserting/suggesting that plaintiff may have been negligent in causing the accident. (Id.)
Discussion
“The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact.” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985].) The burden then shifts to the motion’s opponent to “present evidentiary facts in admissible form sufficient to raise a genuine, triable issue of fact.” (Mazurek v Metropolitan Museum of Art, 27 AD3d 227, 228 [1st Dept 2006].)
Here, Malisky has met his burden for summary judgment by submitting his testimony, as well as the testimony of Castellano and Mitchell. Plaintiff fails to demonstrate that Malisky, Castellano, or Mitchell, were on notice, either constructive or actual, that the glass door was defective. (See Branham v Loews Orpheum Cinemas, Inc., 8 NY3d 931 [2007] [holding that summary judgment must be granted because plaintiff failed to present sufficient evidence that defendant had actual or constructive notice of an obstruction in an aisle].) Furthermore, there has been no showing by the plaintiff that the door that he walked into was defective in any way.
Plaintiffs primary, and indeed sole, argument is that defendant’s motion for summary judgment should be denied because defendant was required to place warning markings on the glass *856 door which caused plaintiffs injuries, pursuant to New York State Industrial Code (12 NYCRR) §§ 47.6, 47.7, and 47.11. Section 47.7 discusses transparent glass doors in mercantile establishments, public buildings, and commercial buildings and structures. The statute states:
“[a] 11 transparent glass doors and fixed adjacent transparent glass sidelights shall be marked as hereinafter required, regardless of the type of glazing material used in their construction. Marking of all transparent glass doors and fixed adjacent transparent glass sidelights within six feet horizontally shall be of an opaque nature placed as hereinafter described in section 47.8 below and shall be of such a design as to be readily discernible to any person approaching the doors and sidelights from any direction.”
Section 47.6 provides that “[t]he owner or affected tenant or both of any building used as a mercantile establishment or a public or commercial building or structure shall be responsible for compliance with the provisions of this Part (rule).” Section 47.5 (d) defines a mercantile establishment as “[a] place where one or more persons are employed in which goods, wares or merchandise are offered for sale and includes a building, shed or structure, or any part thereof, occupied in connection with such establishment.” Plaintiff fails to provide any support as to why the home of defendant would be considered a mercantile establishment, as there is no evidence that goods, wares or merchandise, were for sale at the location.
The subject premises also does not fit the statute’s definition of a public building. Section 47.5 (f) defines a public building as:
“[a] factory building, an office building, a mercantile building, a hotel building, a theatre building, a warehouse building, an apartment building, a State or municipal building, a school, a college or university building, a building containing a place of public assembly maintained or leased for pecuniary gain, or any other building more than one story high except a dwelling house less than three stories high or occupied by less than three families.”
Here, plaintiff fails to demonstrate how section 47.7 would be applicable because the subject premises where plaintiff was injured is a single-family house.
Finally, plaintiff contends that defendant’s house may be considered to be a commercial premises, which section 47.5 (b) *857 defines as “[a] building or structure whose occupants are engaged in, related with, deal with or are occupied with commerce.” Plaintiff contends that defendant, along with Castellano, was in the business of operating residential properties to generate income, that Mitchell was paying some of the bills for the subject premises, and that the house may be considered to be a commercial building because it was being rented for certain time periods in the summer.
The novel issue to be determined is whether the subject premises comes within the definition of section 47.5 as a building or structure used for commercial purposes due to Mitchell’s occasional rental of the subject premises without defendant’s knowledge or consent. This issue appears to be a case of first impression. While there appears to be no case law directly on point, this court believes that the line of cases distinguishing and defining the differences between a homeowner’s noncommercial residential usage of one- or two-family dwellings and those used for commercial purposes to determine the exemption from liability under Labor Law §§ 240 (1) and 241 (6), is instructive.
For instance, in Van Amerogen v Donnini (78 NY2d 880 [1991]), the Court of Appeals held that the exemption from liability under the Labor Law for one- or two-family homeowners did not apply to the defendants who utilized the four-bedroom house exclusively for commercial purposes as an income-producing rental property. However, where the owner minimally utilized the premises for business or commercial use, but retained its primary use of the premises as a one-family residence, the Appellate Division found that said owner would enjoy the exemption from liability under the Labor Laws. (Moran v Janowski, 276 AD2d 605 [2d Dept 2000].)
In this case, it is uncontroverted that defendant utilized the subject premises as a one-family residence. While defendant permitted Mitchell to occasionally stay at his home and Mitchell paid some household expenses, this does not alter its primary character from a residential noncommercial home to commercial usage. Moreover, even though Mitchell rented the subject premises on a number of occasions without the defendant’s knowledge or consent, this too would be insufficient to make the subject premises into a commercial premises because it wasn’t utilized exclusively for commercial purposes as an income-producing rental property as stated in the Van Amerogen case. This case is analogous to Moran because the defend *858 ant clearly retained its primary use of the premises as his residence. Thus, section 47.5 is inapplicable to this case.
Therefore, inasmuch as plaintiff does not demonstrate that the Industrial Code would be applicable to this case, and fails to raise any issues of fact regarding notice, defendant’s motion for summary judgment must be granted.
Conclusion
Accordingly, it is ordered that defendant Daniel Malisky’s motion for summary judgment is granted and the complaint is dismissed.